**Raymond BERN, Plaintiff,**

v.

**UNITED MERCANTILE AGENCIES, et al., Defendants.**

**No. 94 Civ. 4793 (JSR).**

United States District Court, S.D. New York.

Oct. 30, 1996.

David M. Rosoff, Carton & Rosoff, Harrison, NY, for Defendant & Counter Claimant.

## MEMORANDUM OPINION

RAKOFF, District Judge.

This is an action alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. Following discovery, both sides moved for summary judgment. On September 26, 1996, the Court granted summary judgment in favor of the remaining defendant in this action.[1] *See* Order of Sept. 26, 1996. This memorandum will briefly elaborate the reasons for that determination.

The material facts that were properly placed before the Court on the summary judgment motions and not disputed by any contrary admissible evidence show the following.

Defendant United Mercantile Agencies ("UMA") is engaged in the business of debt collection. Plaintiff Raymond Bern was hired by UMA as a trainee in October 1972, shortly after which he became a full-time collector. *See* Plaintiff's 3(g) Statement at ¶ 1. In June of 1973, Bern was promoted to head of a "unit," a defined geographic area. *Id.* In 1979, he was promoted to Assistant Vice President, in charge of supervising ten to fifteen employees. In this position, he spent more time on administrative tasks. *Id.* In 1980, he was promoted to Vice–President/Manager, a job with still greater administrative duties. Finally, in 1987, plaintiff received a final promotion, to manager of UMA's White Plains office. *Id.* Bern was

60 years old at the time. As the administrative manager of the White Plains office, Bern no longer personally handled collections. *See* Deposition of Raymond Bern, December 22, 1994, at 117.

At the time of plaintiff's last promotion in 1987, the president of UMA, Michael Puckett, thought the job should go to another employee, Alan Cozzi. Deposition of Michael Puckett, March 15, 1995, at 53–54. Cozzi, a full-time collector, was also employed in the White Plains office. He was one of UMA's most effective collectors, ranking first or second nationally in terms of dollars collected in recent years. Nevertheless, at least partly out of a feeling that Bern's loyalty and tenure with the company should be rewarded, the chairman of the company, John Hoeck, overrode Puckett's recommendation of Cozzi, and the promotion went to Bern. *Id.*

Between 1991 to 1993, UMA suffered a significant decline in revenues, forcing it to cut costs. *See* Transcript of Oral Argument Before the Court, June 4, 1996, at 7. An outside review was conducted (the "Porter Henry Report"), which recommended, *inter alia,* that the White Plains office concentrate more on the areas of sales and marketing, areas in which UMA executives believed that Bern was particularly weak and Cozzi particularly strong. *See* Defendant's 3(g) Statement at ¶ 9, 11, 12, 16. Additionally, in light of the company's falling revenues, UMA concluded that it could no longer afford a full-time administrative manager like Bern. Accordingly, UMA's Executive Committee decided to eliminate Bern's administrative position and consolidate those administrative duties with the duties of a full-time collector. *Id.* at ¶ 8.

Prior to the implementation of this decision, Puckett called Bern, in the summer of 1992, and inquired about his age; after Bern responded that he was 66, Puckett asked him, as a cost-cutting measure, to withdraw from the company's health plan and enroll in Medicare. Affidavit of Raymond Bern, sworn to January 30, 1996, at ¶ 7. Although

---

**1.** The complaint originally named two individual defendants in addition to United Mercantile Agencies. At a conference on December 8, 1995 before the Hon. Barrington D. Parker, Jr. (to whom this case was previously assigned) the plaintiff stipulated to the dismissal of all claims against these two individuals (who, in any case, had never been served).

Bern was displeased at losing the life insurance benefits that had been provided under the company's plan, he agreed to Puckett's request. *Id.* ¶ 8. Later, Bern was told that two other men had done the same thing, including the chairman of the company, John Hoeck, who is the same age as Bern. Defendant's 3(g) Statement at ¶ 21.

In October 1992, Puckett again asked Bern his age, and Bern responded that he was 66. *See* Plaintiff's 3(g) Statement at ¶ 5. Puckett asked Bern when he planned to retire, and Bern told him that his plan was to continue working and contributing to his 401K plan until he was 70½ years old. *Id.* In the same conversation, Bern asked Puckett what the Porter Henry report had recommended, and Puckett replied "nothing earth-shattering." *Id.* at ¶ 6. At no time during this or any other conversation did Puckett indicate to Bern that UMA was considering eliminating Bern's position, or that it had decided that the White Plains office had to concentrate more on marketing.

Also during October 1992, Puckett visited the White Plains office for several days. During that time, a number of the collectors in that office who worked under Bern's supervision complained to Puckett about Bern's job performance. *See* Affidavit of John Hay, sworn to October 12, 1995; Affidavit of Peter Zonnenveld, sworn to October 10, 1996; Puckett Dep., Exh. 23. The complaints about Bern alleged that he was forgetful, was disorganized in terms of handling telephone messages, improperly handled the files of other collectors when they were on vacation, and spent most of his time on clerical tasks like sorting the mail and ordering office supplies. Cozzi and another colleague, John Hay, told Puckett that, in their opinion, Bern "had really slipped over the past year," a comment Puckett memorialized in a memorandum dated October 15, 1992. *Id.*

On June 25, 1993, Puckett and Hoeck jointly called Bern. *See* Puckett Dep., Ex. 11. Puckett and Hoeck told Bern that UMA had decided to take the White Plains office in a new direction, which would include putting Cozzi in charge of the office. The two men suggested that it was time for Bern to step aside and let Cozzi take over. Bern asked whether he was being fired, and was told that he should consider whether he would like to retire. At that point, Hoeck asked Bern what his retirement intentions had been. Bern told Hoeck that he had intended to continue working until he was 70½ years old, at which point Hoeck replied that this would have given Bern the "longevity record." *Id.* Hoeck and Puckett then gave Bern the weekend to consider whether he wanted to retire. A few days later, Bern spoke to Puckett about a number of issues and, in the course of that conversation, indicated that he wanted his departure from the company announced as his retirement. *Id.*

In July 1993, Bern's administrative duties were re-assigned to Alan Cozzi, who was thirty-eight years old at the time and had been with the company for approximately twelve years. In addition to undertaking Bern's administrative duties, Cozzi was required to maintain his full complement of collection duties. Bern left UMA's employ on September 30, 1993, at which time the company paid to fly Bern and his wife to Louisville, Kentucky (where UMA's headquarters are located) for a retirement dinner. *See* Puckett Dep., Ex. 24. Bern filed a complaint with the EEOC in November 1993 alleging that his termination had been the result of unlawful age discrimination. After receiving his right to sue letter, Bern commenced this lawsuit.

## DISCUSSION

It is obvious even from the brief account above that plaintiff has met the *de minimis* requirements of a *prima facie* case under the ADEA, *see Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir.1995), but that defendant, in turn, has shown facially non-discriminatory reasons for plaintiff's termination. Accordingly, plaintiff bears the burden of showing that there are disputed issues of material fact that, if resolved in his favor, could lead a reasonable juror to find that the defendant's proffered reasons for Bern's discharge—cost-cutting, reorganization, and complaints about his performance— were merely a pretext for discrimination. *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1225 (2d Cir.

1994). Specifically, plaintiff must show that the proffered reasons were false and that, more likely than not, the employee's age was a real reason for the discharge. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 109 (2d Cir. 1994).[2] Plaintiff fails to make this showing.

 As to the alleged falsity of the reasons given for Bern's discharge, Bern alleges that at no point did any UMA executive discuss with him the complaints made about him by Cozzi and others, and suggests that "normal procedure" at any company would be to confront a supervisor with the complaints made about him by his staff. As to cost-cutting and reorganization, Bern alleges that he was never consulted about management's plans to start concentrating on sales and marketing in the White Plains office.

These alleged instances of simple non-disclosure are not sufficient to raise a reasonable inference of falsity, in light of the very substantial proof (including numerous contemporaneous documents) of the complaints having been made and the cost-cutting reorganization having been planned. In response to this substantial evidence of the truth of the reasons given, it is not enough under Rule 56(e) for plaintiff simply to allege that, because he was not informed of these facts at the time, they must be pretextual.

 Moreover, even assuming *arguendo* that defendant's proffered reasons for terminating plaintiff could be inferred to have been false, plaintiff has utterly failed to show that age discrimination was a real reason for his termination, for he has nothing to point to in this regard but stray (and facially innocent) remarks. "Many courts have held that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's summary judgment motion." *O'Connor v. Viacom, Inc.*, No. 93 Civ. 2399, 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996) (collecting cases). Plaintiff has not shown a nexus between the three

age-related comments made by UMA executives and his termination. He was twice asked about his age in connection with his health benefits and 401K plan, long before his termination. *See* Bern Aff. at ¶ 7. The only other age-related comment, while made during the conversation in which plaintiff was terminated, was self-evidently no more than a passing flippancy. *See* Puckett Dep., Exh. 11. Even if these stray comments could somehow be said to demonstrate some evidence of age bias, they are plainly too immaterial to withstand a properly supported motion for summary judgment. *Woroski*, 31 F.3d at 109–10 (emphasis in original). *See also O'Connor*, 1996 WL 194299, at *7; *Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2d Cir.1981).

In short, plaintiff has failed to satisfy his burden, and for this reason the Court, as noted, previously awarded judgment in favor of defendant.

---

2. The obvious reason for this two-fold test is, *inter alia*, that an employer might have many non-discriminatory reasons for concealing the "real" reason for termination. The real reason might be confidential, embarrassing, or simply unsound. "The ADEA bars an employer from discharging an employee because of age, but does not prohibit an employer from discharging an employee based on non-discriminatory factors, however subjective and unsound." *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir.1984) (internal citations omitted).