Monica KOPPENAL, Plaintiff,

v.

NEPERA, INC. and Richard
J. Seidel, Defendants.

No. 98 Civ. 1029 (WCC).

United States District Court,
S.D. New York.

Dec. 1, 1999.

**410**

Stern & Rindner, Goshen, NY, Mark D. Stern, of counsel, for plaintiff.

Clifton Budd & DeMaria, LLP, New York City, Eric S. Lamm, George F. Brenlla, of counsel, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff, Monica Koppenal has brought this action against her former employer Nepera, Inc. ("Nepera") and its president, Richard J. Seidel, claiming that her employment was unlawfully terminated in violation of Title VII of the 1964 Civil Rights Act, as amended ("Title VII"), and in violation of New York Executive Law § 296. Defendants now move for summary judgment. For the reasons stated below, the motion is denied.

## BACKGROUND

Plaintiff was hired as an administrative assistant for Seidel, the president of Nepera, on October 6, 1992. Plaintiff's duties included: serving as secretary for Seidel, administrator of the phone system and the company car, MIS backup, oversight of operation of non-computer office equipment, and sorting mail. (Pl.Ex.G.)

In April 1996, plaintiff took a five-week leave of absence to undergo surgery to enable her to get pregnant. Seidel knew the reason for plaintiff's leave. While plaintiff was out, Anita Halstead performed plaintiff's duties. Halstead became a full-time Nepera employee in 1982, and was administrative assistant to the president from 1988 to 1992. From 1995 to 1997, Halstead was a community relations and training specialist.

On January 27, 1997, plaintiff informed Seidel that she was pregnant. Seidel congratulated her and asked if she would return to work after having the baby. Plaintiff assured Seidel that she would return to work because she had to pay for a new house and provide for a baby. Seidel commented that many women say that they plan to return to work but, after having their child, decide to stay home. Plaintiff alleges that defendant asked who would do his work, but defendant denies having asked this question. (Seidel Dep. at 85.) David Bona, Director of Human Resources at Nepera, testified that Seidel spoke with him after learning of plaintiff's pregnancy and was concerned about who was going to do his work while plaintiff was out. (Bona Dep. at 27–28.)

Reduced profitability during the second half of 1996 caused Nepera to implement cost reduction measures, including a reduction in its workforce. Seidel worked with the managers at Nepera to determine how to reduce the workforce in each department. In evaluating each employee for lay-off, Seidel and the managers considered skills, job performance and years of service. In April and May 1997, Nepera laid off plaintiff and three other salaried employees and two hourly employees. Of all the administrative workforce at Nepera, plaintiff had the shortest tenure and the second lowest performance evaluation. The employee with the lowest performance evaluation was also laid off.

Halstead, a single employee who was not pregnant, took over plaintiff's duties as administrative assistant to the president in May 1997. Halstead testified that she continued to perform her duties as a community relations specialist while also performing plaintiff's duties. (Halstead Dep. at 31.) Halstead continued to work forty hours per week, as she had before taking on plaintiff's duties. No one was hired to perform Halstead's community relations duties, although Halstead's former training duties are now conducted by the Human Resources Department. Halstead testified

that about 50% of her time from May through December 1997 was spent acting as administrative assistant to the president. (Id. at 30.) Halstead answered the telephone as administrative assistant to the president and community relations specialist, but in her voice mail greeting she identifies herself as the administrative assistant to the president.

Plaintiff contends that Seidel told her that her position had been eliminated. (Pl. Aff.¶ 22.) Defendants dispute whether anyone ever told plaintiff that her position had been eliminated. The other administrative assistant that was laid off, Betty Torrance, had provided administrative assistance to Nepera's manager of environmental services and director of regulatory affairs. After Torrance's lay-off, these two employees handled their own secretarial services or utilized another member of the administrative staff on an "as needed" basis. (Seidel Aff. ¶ 12.)

After making the decision to lay-off plaintiff, Seidel asked the Human Resources Department about Nepera's pregnancy leave policy, in an effort to ensure that plaintiff's severance package would include benefits equal to what plaintiff would have received on a pregnancy leave.

## DISCUSSION

### I. *Summary Judgment Standard*

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d

Cir.1995), *vacated and remanded on other grounds,* 166 F.3d 422 (1999). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### II. *Pregnancy Discrimination Act*

Plaintiff brings this action under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), and New York Executive Law § 296. The PDA is a definitional amendment to Title VII enacted to include pregnancy-based discrimination in Title VII's prohibition of gender-based employment discrimination.[1] The elements of an employment discrimination claim are "virtually identical" under the New York Executive Law and Title VII. *Lacoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 225 (S.D.N.Y.1997). Therefore, our analysis of plaintiff's Title VII claim is equally applicable to plaintiff's claim under New York Executive Law § 296.

A claim for employment discrimination is governed by the three-step burden shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this analysis, plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption that the employer unlawfully discriminated against the employee is raised and the burden of production then shifts to the employer to "articulate a legitimate,

---

1. The PDA provides, in relevant part:
   The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes. . . .

clear, specific and non-discriminatory reason for discharging the employee." *Quaratino*, 71 F.3d at 64. If the employer does so, the presumption of discrimination disappears and the plaintiff has the burden of proof by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

### A. *Plaintiff's Prima Facie Case*

■ A plaintiff can establish a prima facie case of pregnancy discrimination by showing that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by the position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *See Quaratino*, 71 F.3d at 64. In the alternative, a plaintiff may satisfy the fourth element by showing that the discharge "occurred in circumstances giving rise to an inference of unlawful discrimination." *Id.* It is undisputed in this case that plaintiff was a member of the protected class because she was pregnant, that she satisfactorily performed her duties as administrative assistant, and that she was discharged. Defendants dispute, however, that plaintiff put forth sufficient evidence to satisfy the fourth element of the prima facie case.

■ Plaintiff contends that Seidel told her that her position was eliminated. Defendants dispute that Seidel made this statement, but admit that the functions of the assistant to the president were not eliminated. However, defendants argue that plaintiff's position did not remain open, but was combined with the position of community relations specialist as part of a "normal redistribution of duties following a force reduction." It is undisputed that

plaintiff's duties were assumed by a non-pregnant employee, Halstead. Because there exists a disputed material fact, namely whether plaintiff's position remained open, this Court will not grant summary judgment for defendants on the ground that plaintiff failed to establish a prima facie case. Even if defendants are correct that plaintiff's position did not remain open, this Court must consider the alternate grounds for the fourth element of the prima facie case.

■ As mentioned above, plaintiff may alternatively establish a prima facie case of discrimination by showing that she was laid off in circumstances giving rise to an inference of unlawful discrimination. Plaintiff's burden to establish a prima facie case "is not onerous." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[2] As evidence of unlawful discrimination, plaintiff points to Seidel's comments when he learned that she was pregnant. Considering the facts in the light most favorable to plaintiff, Seidel asked plaintiff "who would do his work" and commented that many women say that they are going to return to work, but decide, after giving birth, to stay at home. In *Quaratino*, the plaintiff established a prima facie case by showing that the defendant had uttered an expletive when she told him that she was pregnant and expressed his opinion that mothers should stay at home with their children. 71 F.3d at 65. In *Balut v. Loral Electronic Sys.*, there was no prima facie case of age discrimination even though the defendant referred to another laid-off employee as "an older engineer with health problems." 988 F.Supp. 339, 348 (S.D.N.Y.1997) (Conner, Senior J.), aff'd 166 F.3d 1199 (2d Cir.1998). In *Balut*, the employer's comments did not refer directly to the plaintiff or his age. *Id.* In the present case, unlike *Balut*, the em-

---

2. In fact, some courts within this Circuit assume the existence of a prima facie case and move to the "ultimate issue" of "whether the plaintiff has proven that it is more likely than not that the employer's decision was motivated at least in part by an 'impermissible,' or discriminatory, reason." *Shafrir v. Association of Reform Zionists of Am.*, 998 F.Supp. 355, 360 (S.D.N.Y.1998) (Chin, J.).

ployer's comments were directed at and referred personally to plaintiff. Considering the light burden on plaintiff, Seidel's comments are sufficient to establish the fourth element of the prima facie case. Therefore, plaintiff has put forth sufficient evidence to prove a prima facie case of pregnancy discrimination.

### B. Defendant's Non–Discriminatory Reasons for Discharging Plaintiff

■ Once plaintiff has established a prima facie case of discrimination, the burden of production passes to defendants to offer a legitimate, non-discriminatory reason for laying off plaintiff. Defendants offer undisputed evidence that, as the result of reduced profitability during 1996, Nepera implemented cost reduction measures, including a reduction in its workforce. Courts have uniformly found that a reduction in workforce because of financial difficulties is sufficient to fulfill a defendant employer's burden of production. *See Viola v. Philips Med. Sys. of North Am.*, 42 F.3d 712, 717 (2d Cir.1994) (company wide reduction in work-force); *Woroski v. Nashua Corp.*, 31 F.3d 105, 109 (2d Cir. 1994) (business-justified company-wide reduction in force); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1226 (2d Cir.1994) (business down-turn and reduction in force); *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1115 (2d Cir. 1988) (corporate reorganization); *Gordon v. Fenniman*, No. 94 Civ. 6972, 1998 WL 126062, at *3 (S.D.N.Y. March 19, 1998) (severe economic difficulties required elimination of plaintiff's department); *Balut*, 988 F.Supp. at 349–50 (general reduction in force). Therefore, defendants' undisputed evidence of a reduction in workforce as the result of financial difficulties is sufficient to satisfy their burden of articulating a legitimate, nondiscriminatory reason for laying off plaintiff.

### C. Pretext

■ If the employer satisfies its burden of production, the presumption of discrimination "simply drops out of the picture." *Hicks*, 509 U.S. at 510, 113 S.Ct. 2742. A plaintiff can avoid summary judgment for the defendant only by proving both that the defendant's asserted non-discriminatory reason is false and that its real reason was unlawful discrimination. *See id.* at 515–16, 113 S.Ct. 2742. Plaintiff's evidence of pretext is the same evidence put forth to establish her prima facie case: Seidel's comments to plaintiff when he learned of her pregnancy and the filling of plaintiff's position by a non-pregnant employee.

Plaintiff argues that Seidel's comments in response to learning that she was pregnant are evidence of defendants' discriminatory motivation for terminating plaintiff. However, "stray remarks in the workplace, by themselves ... will not defeat the employer's summary judgment motion...." *Bern v. United Mercantile Agencies*, 942 F.Supp. 217, 220 (S.D.N.Y.1996) (quoting *O'Connor v. Viacom, Inc.*, No. 93 Civ. 2399, 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996), *aff'd* 104 F.3d 356 (2d Cir. 1996)). In *Bern*, the plaintiff's evidence of age discrimination, consisting of three age-related comments made by his employer, was insufficient to show that the defendant's non-discriminatory reason for terminating the plaintiff was pretextual. 942 F.Supp. at 220; *see also Woroski*, 31 F.3d at 109–10 (granting summary judgment in age discrimination case despite comments by employers that older employees lack an aggressive and competitive disposition).

Although offensive remarks in the workplace are insufficient by themselves to prove discrimination, if there is a nexus between the remarks and the plaintiff's termination, there may be sufficient evidence of pretext to survive a motion for summary judgment. In *Treuting v. Massachusetts Mutual Life Ins. Co.*, the plaintiff was not selected for a new position when employees had to apply for new positions within the company because of a corporate transformation. No. 3:96CV1542, 1999 WL 200701, at *2

(D.Conn. March 7, 1999). The plaintiff in *Treuting* was pregnant during her interview for a new position, and the court found the defendant's expressions of concern about her pregnancy and her impending maternity leave during the interview were sufficient to raise a genuine issue of material fact in regard to the employer's intent. *Id.* at *5. In this case, Seidel's concern about who would do his work while plaintiff was gone and whether plaintiff would return to work after her maternity leave were similar to the employer's questions in *Treuting*.

Where offensive remarks are combined with other evidence of discriminatory intent, courts are reluctant to grant summary judgment for the defendant. In *Kerzer v. Kingly Manufacturing*, the defendant made offensive remarks such as "an employer can easily get away with discharging a pregnant employee" and pregnancy was "a sign that [the plaintiff] was lazy." 156 F.3d 396, 399 (2d Cir.1998). In addition to these remarks, the defendant asked the plaintiff to move up her date of return from maternity leave and hired another employee shortly after the plaintiff's discharge that performed the plaintiff's duties, despite claiming that the plaintiff's position was no longer necessary. *See id.* Similarly, plaintiff here argues that in addition to Seidel's remarks about women not wanting to return from maternity leave, defendants did not eliminate her position but merely transferred her duties to a non-pregnant employee.

Hiring replacement employees or giving an open position to another employee following a workforce reduction may create an inference of improper motive. *See Viola*, 42 F.3d at 718. In *Valenti v. Carten Controls Inc.*, despite the defendants' argument that the plaintiff's position was eliminated, the court denied the defendants' motion for summary judgment because the plaintiff's job duties were not eliminated, but transferred to another employee. No. 3:94CV1769, 1997 WL 766854, at *7 (D.Conn.1997). Similarly in *Shafrir*, the plaintiff was dismissed after returning from maternity leave and replaced by a colleague who was neither pregnant nor a mother. 998 F.Supp. at 362 (denying defendants' motion for summary judgment on the plaintiff's discrimination claim).

In the present case, defendants admit that plaintiff's position was not eliminated, and her duties were transferred to a non-pregnant and single female colleague, Halstead. Defendants' argue that Halstead continued to do her duties as community relations specialist in addition to taking on plaintiff's duties, so that costs were reduced by having one employee doing the work previously done by two. Plaintiff argues that because Halstead testified that she worked forty hours a week as community specialist and continued to do so after taking on plaintiff's position, it would be impossible for her to complete the duties of both positions. As in *Valenti* and *Shafrir*, the fact that plaintiff's position was not eliminated creates a material issue of fact as to whether defendants' claim that plaintiff was fired as part of a reduction in force is a pretext for pregnancy discrimination.

Although it is a close case, considering that defendants gave plaintiff a five-week leave of absence in order to have surgery to assist her in getting pregnant and that Seidel tried to ensure that plaintiff received sufficient benefits in her severance package, a reasonable juror nonetheless could find that plaintiff's termination was illegally discriminatory. In light of the Second Circuit's indications that "a trial court must be cautious about granting summary judgment to an employer when . . . its intent is at issue," *Gallo*, 22 F.3d at 1224, defendants' motion for summary judgment must be denied.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is denied.

SO ORDERED.