**Mary Wade SMITH, Plaintiff,**

v.

**K & F INDUSTRIES, INC. and Loral Space and Communications, Ltd., Defendants.**

**No. 00 CIV. 5422(VM).**

United States District Court, S.D. New York.

March 20, 2002.

646

Gregory L. Hawthorne, Robert G. Androsigilio, Radna & Androsiglio, New York City, for Plaintiff.

John K. Diviney, Alan B. Pearl & Associates, P.C., Syosset, NY, Kenneth R. Schachter, Silverberg, Stonehill & Goldsmith, P.C., New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

This is a proceeding in the matter of *Mary Wade Smith v. K & F Industries, Inc. and Loral Space and Communications, Ltd.*, docket number 00 civ. 5422. Defendant K & F Industries, which the Court will refer to as "K & F", and Defendant Loral Space and Communications, Ltd., herein referred to as "Loral", each filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against all claims. The Court rules on those motions below.

On July 21, 2000, Mary Wade Smith, whom I will call "Smith", filed a complaint alleging that defendants terminated her employment on the basis of her pregnancy and childbirth in violation of 42 U.S.C. § 2000e, New York State Executive Law § 296 and New York City Administrative Code § 8–107. Defendants filed an answer denying Smith's claims, and, following the close of discovery on July 23, 2001, filed motions for summary judgment. Smith opposed each motion. The Court assumes the parties are familiar with the background of this case and will not summarize it on the record here.

## DISCUSSION

A court may grant a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 only if there is no genuine issue as to any material question of fact and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(e) specifies that when a motion for summary judgment is supported by affidavits, pleadings, depositions, answers to interrogatories or admissions on file, the non-movant cannot rest on mere allegations or denials and must show more than some metaphysical doubt as to the material facts, in order to survive the motion. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court's duty is to find, not resolve, any genuine issues of material fact that may exist. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The Pregnancy Discrimination Act, codified as part of Title VII at 42 U.S.C. § 2000(e)(k), states that "women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including

receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." The New York Human Rights Law and New York City law provide the same sort of protections. *See* New York Executive Law § 296; New York City Administrative Code § 8–107; *see Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir.1995).

■ Title VII applies only to "employers" within the meaning of that statute. An "employer" under Title VII is defined to be "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b); *Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir.1996). Whether a defendant falls within the meaning of "employer" in Title VII may be resolved on a motion for summary judgement. *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir.2000).

### A. *"Employer" Definition Under Title VII.*

■ In its motion for summary judgment, K & F first argued that because it employed less than 15 employees and that because it is not an integrated enterprise with Loral, it falls outside of the scope of Title VII. Smith contended that K & F and Loral are a single employer with over 100 employees between them.

■ In the context of separate corporate entities, a court may calculate the number of employees by reference to another entity's employment rolls if the two distinct entities "collapse" into a single employer under the integrated enterprises test. *See Coraggio v. Time Inc. Magazine co.*, No. 94 civ. 5429, 1995 WL 242047, *2 (S.D.N.Y. Apr. 26, 1995). The Second Circuit instructs that a single employer collapse between separate corporate entities occurs only where two businesses have: (1) interrelated operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir.1995). The most essential factor is the second. *See id.* In consideration of that factor, a court should determine what entity made the final employment decisions relating to the person claiming discrimination. *See id.* The question of whether two companies constitute a "single employer" is a question of fact. *See Lihli Fashions Corporation, Inc. v. N.L.R.B.*, 80 F.3d 743, 746 (2d Cir.1996).

K & F offered the affidavit of Ken Schwartz, the current president and chief operating officer of K & F, who stated that K & F maintains separate management, bank accounts, payroll and tax filings, and does not share "operations" with Loral.

But, regarding the most important factor of control over labor relations, Schwartz admitted that K & F does not maintain a distinct "human resources department" but instead "uses" Loral's human resources department. For instance, Schwartz used Loral's form "severance agreement" to terminate Smith's employment at K & F. Schwartz stated that he did not participate in Loral's hiring and firing decisions and that he made the decision to terminate Smith's employment without Loral's input.

In opposition, Smith submitted her own affidavit, in which she stated that she initially interviewed for her position with Cynthia Simon, the director of personnel for Loral. Further, it was Simon who offered her the position at K & F and who described the terms of her employment at K & F. Smith stated that while she was employed at K & F her "supervisors" told

her that K & F's maternity leave policy was whatever policy Loral had in place; indeed, when Smith asked for the particular policy, one of her supervisors telephoned Loral's personnel department to determine what K & F's policy would be. Although Schwartz was the one to inform Smith of her termination, Smith states that she received follow-up telephone calls from Stephen Jackson, vice president of Loral's personnel department, asking whether she had signed the termination agreement. Jackson also sent her a letter, written on Loral stationary, withdrawing K & F's termination offer. Thus, Smith has provided specific evidence concerning centralized control of labor relations between K & F and Loral that demonstrate a genuine, disputed issue of material fact.

Regarding the other three factors, too, Smith introduced evidence of interrelated operations and financial control that create a material question of fact regarding the integration of Loral and K & F. Smith introduced evidence that the corporations shared an environmental lawyer as an employee; that K & F reimbursed a Loral employee's travel expenses; and that K & F and Loral shared corporate accounts for Federal Express, temporary staffing, car and bagel services. K & F does not refute these facts. On this record, the Court finds a genuine issue of material fact regarding Loral's status vis-a-vis K & F and denies K & F's motion for summary judgment insofar as it contends that K & F is not an "employer" within the meaning of Title VII.

**B.** *Prima Facie Case: Satisfactory Performance of the Position.*

■ As its second ground for summary judgment, K & F argued that Smith could not establish each element of the prima facie case of pregnancy discrimination. To establish the prima facie case of pregnancy discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she satisfactorily performed her position's duties; (3) she was discharged; and (4) her position remained available and was ultimately filled by a non-pregnant employee. *See Koppenal v. Nepera, Inc.,* 74 F.Supp.2d 409 (S.D.N.Y.1999).

■ K & F argued that Smith did not satisfactorily perform the duties required by her position. Whether job performance was satisfactory depends on the employer's criteria for performance of the job, not the standards that a court might feel would be reasonable. *See Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 29 (2d Cir.1997). To this end, the Court will look at K & F's assessments of Smith's position and performance.

K & F submitted Smith's annual reviews for three years in which K & F asserts Smith received low evaluations in the areas of skill, initiative and knowledge. The Court's review of these documents, however, does not wholly confirm K & F's interpretation. Rather, in 1997, Smith received mostly "satisfactory" to "outstanding" ratings in individual criteria, and an overall rating between "above average" and "satisfactory." K & F gave her a $4,000 raise. Then, in 1998, Smith received "average" to "above average" ratings in individual criteria and an overall rating of "above average." She was given a $4,000 raise. In July 1999, only one month after she informed her supervisors and co-workers that she was pregnant, for the first time Smith received a "satisfactory" to "below average" overall rating.

The Court notes, however, that Smith received "below average" ratings in only six (6) of a possible thirty-five (35) individual criteria; Smith otherwise received "satisfactory" and "above average" ratings in the individual criteria. Despite this lower overall rating, K & F gave Smith the

same $4,000 raise it gave her in 1997 and 1998. Thus, the Court finds that the annual reviews do not indisputably establish K & F's argument.

To bolster its characterization of Smith's job performance as deficient, K & F introduced the affidavit of Glenn D'Alessandro, Smith's supervisor who completed Smith's annual review each year. D'Alessandro stated that Smith had failed to complete the monthly closing of the general corporate ledger every month during 1998 and 1999, as she was assigned to do. He stated it was these failures during 1999 that caused him to rate her as "below average" on the 1999 annual review. Secondly, he stated that in January 1999, while Smith was on maternity leave, K & F encountered a problem concerning its 401–K deductions which D'Alessandro stated was caused by Smith's use of percentage terms instead of dollar terms to calculate the deductions from paychecks. He stated that such use was the reverse of the instructions he had given to Smith previously. Correcting this error took D'Alessandro a week and a half. Finally, Smith admits that she had borrowed some money from K & F's petty cash, approximately $80.00, and failed to replace it before going on maternity leave.

■ As already stated, the annual reviews of Smith's job performance do not clearly support K & F's point. D'Alessandro's affidavit may shed light on his considerations, but, in light of Smith's affidavit, it does not merit a granting of summary judgment. Furthermore, D'Alessandro had reviewed and approved the 401–K work Smith had done before she left for maternity leave and he had not caught the error himself. Smith states that she went into early labor and had to take maternity leave early. Thus, she was unable to complete the monthly closing of the general corporate ledger that

month according to her evidence. Nor was she able to replace the petty cash before departing. She asserts that she did return the petty cash upon her return to work in January. She stated that her supervisors never discussed the petty cash incident with her. Furthermore, she stated that she never received a written warning, reprimand or other indication that she was in danger of termination.

Especially in light of the insufficiently explicit annual review evidence submitted by K & F, Smith's specific, factual allegations could support a reasonable finding that her performance was satisfactory by K & F's standards. As such, the Court denies K & F's motion for summary judgment asserted on this ground.

### C. *Sufficiency of Evidence to Permit Inference of Discrimination*

■ K & F's third ground for summary judgment is that the circumstances of Smith's termination cannot give rise to an inference of pregnancy discrimination. K & F asserted that Smith, after taking eight weeks of paid maternity leave and two weeks of paid vacation, returned to her previous job without a change to her job functions on January 24, 2000. Rather, she was fired when she was no longer pregnant, on February 22, 2001. K & F also asserted that another employee, Lysa Jones, had taken a paid maternity leave and was still working for K & F.

Smith countered that the timing of her pregnancy announcement in June 1999, and the first less than enthusiastic annual review in July 1999, is sufficient evidence from which a reasonable inference may be drawn that her employers assessed her on the basis of her pregnancy and not her work. Smith noted that the pregnancy discrimination act applies to "women affected by pregnancy [and] childbirth", 42 U.S.C. § 2000e(k), such that Smith's non-

pregnant status in January and February 2000 does not preclude this action. Finally, Smith stated that she was replaced by a non-pregnant employee. Smith's opposition overcomes K & F's motion to dismiss on summary judgment because she has adduced sufficient facts upon which the trier of fact may reasonably base an inference of pregnancy discrimination. Thus, there is a genuine issue of material fact that precludes summary judgment on this issue.

### D. Burden Shifting: Rebutting Legitimate, Non–Discriminatory Basis

Finally, K & F argues that it had a legitimate, non-discriminatory basis for terminating Smith's employment, and that Smith cannot rebut K & F's showing. Smith argues that K & F's claim to a legitimate, non-discriminatory motive is not credible, and that, even if it were credible, Smith presented sufficient evidence to rebut it.

Once a plaintiff has stated the prima facie case of pregnancy discrimination, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the discharge. If the defendant carries that burden of production, the burden returns to the plaintiff for rebuttal. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff cannot produce direct, circumstantial or statistical evidence that shows the legitimate, non-discriminatory reason is false or pretextual, then the plaintiff's case fails. *See Flores v. Buy Buy Baby, Inc.,* 118 F.Supp.2d 425, 431–32 (S.D.N.Y.2000); *see also Gallo,* 22 F.3d at 1226.

K & F asserts that the decision to terminate Smith was based on (1) the 1999 annual review and (2) K & F's opinion of her "lack of integrity," as evinced by the petty cash incident, and (3) her failure to perform her job, as evinced by the 401–K error and failure to complete every monthly closing of the general corporate ledger. As already explained in the context of K & F's second ground for summary judgment, K & F's claim that Smith did not perform her job satisfactorily presents a genuine issue of material fact. Likewise, Smith received no reprimand for the petty cash incident. A lack of written warning, disciplinary action or reprimand is evidence that may rebut a defendant's asserted legitimate, non-discriminatory rationale. *See Flores,* 118 F.Supp.2d at 430. Finally, Smith's failure to complete the monthly closing of the general corporate ledger every month was addressed in the annual review, and logically, therefore, cannot provide a separate or distinct ground for dismissal. Thus, K & F has not established a legitimate, non-discriminatory reason and the Court will not transfer the burden of production to Smith.

Nevertheless, Smith introduced evidence that would rebut a legitimate, nondiscriminatory reason. In particular, prior to her taking maternity leave, Smith's supervisors—Dirksen Charles, D'Alessandro and Schwartz—all made what she characterizes as inappropriate comments and intrusive inquiries regarding her pregnancy. According to Smith, D'Alessandro repeatedly commented that "you are not going to leave your child in childcare", and once asked "are you going to feel comfortable leaving your baby to come back to work?". Smith alleges that Charles once commented "once you hold your baby in your arms you won't want to come back to work." All three supervisors asked her who would mind her baby. In her deposition, Smith stated that these comments made her feel uncomfortable, but she did not report these comments and questions to anybody.

Then, after Smith gave birth and while she was on maternity leave she attended the December 1999 K & F Christmas party. At that party, Smith contends, other K & F employees upset her with questions about her return date. Under the circumstances, given their recurrence and attribution to various employees, the Court cannot fairly characterize these comments as "stray." *See Koppenal,* 74 F.Supp.2d at 413–14 (citing *Bern v. United Mercantile Agencies,* 942 F.Supp. 217, 220 (S.D.N.Y. 1996)).

Finally, the Court is aware of the temporal connection suggested by Smith's announcement of her pregnancy and first annual review that characterized her performance as less than satisfactory. *See Flores,* 118 F.Supp.2d at 431.

■ Thus, as the court in *Koppenal* stated: "Where offensive remarks are combined with other evidence of discriminatory intent, courts are reluctant to grant summary judgment for the defendant." 74 F.Supp.2d at 414. That statement is applicable to the instant case and the Court denies K & F's motion for summary judgment in its entirety.

### E. *Loral's Motion for Summary Judgment: Is It Smith's Employer?*

Defendant Loral, on the other hand, based its motion for summary judgment on its assertion that Smith was never employed by Loral. Loral further argued that it should be dismissed from the case entirely because Smith did not identify any Loral employee as having discriminated against her.

■ As already stated, Title VII applies to "employers." The employer definition encompasses a party who significantly affects the individual plaintiff's access to employment opportunities. *See Matthews v. New York Life Insurance*

*Co.,* 780 F.Supp. 1019, 1023 (S.D.N.Y. 1992). Thus, liability under Title VII is not necessarily limited to the direct employer.

In asserting claims against Loral, Smith relies on a "single employer" theory. To determine whether two distinct corporate entities collapse into a "single employer", a court looks to the same four "integrated enterprise" factors identified in the *Cook* case already discussed. *See Rivera v. Puerto Rican Home Attendants Services, Inc.,* 922 F.Supp. 943, 949 (S.D.N.Y.1996). Thus, in opposition to Loral's motion, Smith raised the same arguments she raised in opposition to K & F's assertion that it is not an "employer" under Title VII. The Court will not repeat these points now.

As already explained, whether Loral and K & F constitute an "integrated enterprise" for purposes of Title VII liability presents a genuine question of material fact. The submission made by Loral in support of its motion for summary judgment does not alter that conclusion. First, Loral concedes that its chairman was also chief executive officer of K & F and that Jackson, a Loral employee, wrote a letter on Loral letterhead to Smith concerning the severance offer K & F made to Smith. Loral also introduced the deposition testimony of its personnel director to show that Loral had no direct supervisory control over Smith's employment and no role in offering Smith a full time position with K & F. But this distinct employment decision, made prior to Smith's pregnancy, does not weigh against the Court's finding of a material question of fact.

In light of the factual dispute under the "single employer" test, that Smith did not identify a particular Loral employee as having made discriminatory comments to her does not warrant Loral's dismissal from the case. Accordingly, the Court

denies Loral's motion for summary judgment.

### Conclusion

As the Court has now denied the motions for summary judgment filed by K & F and Loral, the parties must resume pretrial preparations and scheduling of a trial.

### ORDER

For the reasons set forth in the "Statement of the Court," attached and incorporated herein, issued on the record at the March 19, 2002 status conference in this matter, it is hereby

**ORDERED** that defendant K & F Industries's motion for summary judgment is denied in its entirety; and it is further

**ORDERED** that defendant Loral Space and Communications's motion for summary judgment is denied in its entirety.

**SO ORDERED.**