Dayna McDERMOTT, Plaintiff,

v.

TOWN OF WINDHAM PUBLIC SCHOOLS, Patrick Proctor, and Jack Giordano, Defendants.

No. 3:99CV1943 (RNC).

United States District Court,
D. Connecticut.

Sept. 30, 2002.

Paul Mpande Ngobeni, E. Hartford, CT, for Plaintiff.

US Court of Appeals, Office of the Clerk, New York City, Notice only.

Kerry R. Callahan, Dana R. Baughns, Updike, Kelly & Spellacy, P.C., Hartford, CT, Bernard E. Jacques, Attorney, Pepe & Hazard, Hartford, CT, for Defendants.

## RULING AND ORDER

CHATIGNY, District Judge.

Plaintiff, a Caucasian female formerly employed as a teacher in the Windham public school system, brings this action alleging that her employment was terminated in violation of her rights under federal and state law. Defendants have moved for summary judgment on all the claims in the amended complaint. Plaintiff has cross-moved for summary judgment on the federal claims. She has also moved to strike statements and exhibits in defendants' motion papers. For reasons stated below, plaintiff's motions to strike [doc. 55–1] and for summary judgment [doc. 56–1] are denied; and defendants' motion for summary judgment [doc. 43–1] is granted as to the federal claims, which are dismissed with prejudice, but denied as to the state law claims, which are dismissed without prejudice.[1]

### I. Background

Plaintiff was a tenured teacher at a middle school in North Windham. In 1996, she started dating another teacher at the school, Juan Arriola, who is Hispanic and Native American. During the 1996–97 school year, Arriola was investigated for sexual harassment following complaints by his previous girlfriend, Terése Duenzl, and

---

1. A claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., was previously dismissed as time-barred.

her friend, Maureen Ryan, both also teachers at the school. As a result of the sexual harassment complaints, Arriola was suspended with pay and his contract was not renewed.

Plaintiff sided with Arriola in the sexual harassment dispute and became embroiled in it in ways that led to her suspension with pay and the convening of an impartial hearing panel pursuant to Conn. Gen.Stat. § 10–151(d). After a lengthy investigation, the panel recommended that her employment be terminated for the following specific instances of insubordinate and otherwise unacceptable conduct: her violation of a direct, reasonable order that she not discuss the sexual harassment investigation (the panel found that she tried to intimidate a witness by warning the witness not to cooperate with the investigation); her distribution of a newspaper she had her class prepare entitled "The Tribal Press," which blamed the administration for the destruction of Native American dwellings built by her class (the panel found that the paper "excoriated" the administration); and her deliberate filing of "frivolous charges of child abuse" against Arriola's accusers, Duenzl and Ryan, "to harass, annoy and embarrass them for reasons of personal vindictiveness" (the panel found that she filed the charges anonymously with the Connecticut Department of Children and Families ("DCF"), which concluded that the charges were unfounded).

After the panel rendered its recommendation but before it was implemented, plaintiff resigned in an attempt to avoid termination. The Board accepted her resignation but also adopted the panel's recommendation that her employment be terminated.

Plaintiff denies that she engaged in the conduct found by the hearing panel and asserts that she was terminated because school officials disapproved of her interracial relationship with Arriola and her opposition to discrimination at the school. Defendants contend that she was terminated based on the recommendation of the impartial hearing panel.

## II. Discussion

### *Motion to Strike*

Plaintiff's motion to strike seeks to eliminate references to other proceedings that preceded the filing of this action. There were four proceedings: the hearing before the impartial panel convened under Conn. Gen.Stat. § 10–151(d), which resulted in the termination of her employment; a proceeding before the Connecticut Commission on Human Rights and Opportunities; DCF's investigation of a child abuse allegation; and a hearing before the Employment Securities Division of the Department of Labor, which resulted in a denial of her claim for unemployment benefits.

■ Plaintiff contends that evidence relating to these proceedings should not be considered because the proceedings occurred after she was suspended with pay. She particularly objects to consideration of the findings of the impartial hearing panel on the ground that they constitute after-acquired evidence of misconduct.

The motion to strike is denied. The panel's findings are relevant because the amended complaint seeks redress not only for the suspension with pay but also the termination, which was predicated on the panel's recommendation.

Plaintiff also argues that any findings or conclusions made in the other proceedings are not entitled to preclusive effect. Even assuming her position is correct, it does not provide a basis for a motion to strike.

■ In addition, plaintiff argues that evidence concerning the other proceedings is inadmissible hearsay. " 'Hearsay' is a

statement ... offered in evidence to prove the truth of the matter asserted." Fed. R.Evid. 801(c). The factual findings of the impartial hearing panel, on whose recommendation plaintiff's position was terminated, as well as the findings of the CCHRO and DCF, on which the impartial hearing panel relied, are not hearsay because they are offered as evidence of defendants' motivation in terminating plaintiff's employment rather than as evidence of the truth of the matters asserted.[2]

*Motions for Summary Judgment*

1. *Race Discrimination*

■ Assuming for purposes of this ruling that plaintiff has presented a prima facie case of discrimination, she cannot prevail unless she proves that the termination were motivated at least in part by animus against Hispanics and Native Americans. The record before the court, viewed most favorably to the plaintiff, would not permit a reasonable juror to draw that inference.

Plaintiff disputes the findings of the impartial hearing panel that recommended her termination. She alleges that Arriola's contract was not renewed for racial reasons, that she had a right to discuss the sexual harassment investigation with others, and that the "Tribal Press" was a legitimate teaching tool.[3]

The issue presented by the discrimination claim is not whether the panels' findings are well-founded. The issue is whether plaintiff can prove that defendants terminated her because of unlawful discrimination. On the evidence presented, a reasonable juror would be bound to find that plaintiff's employment was terminated based on the recommendation of the impartial hearing panel. No reasonable jury could find that the defendants would have rejected the panel's recommendation were it not for animus against Hispanics and Native Americans.

2. *First Amendment Retaliation*

■ Plaintiff claims that she was terminated in violation of the First Amendment for speaking in "opposition to discrimination against other employees and students, particularly racial minorities." Am. Compl. at 10. To support a free speech-retaliation claim, a public employee's speech must relate to a matter of public concern and not a private grievance. *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If speech is of public concern, and if adverse action is taken in retaliation, the employee can prevail under the First Amendment if her interest as a citizen, in commenting on the matter, outweighed the interest of the State as an employer. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

■ Whether plaintiff's speech addressed a matter of public concern depends on its content, form, and context. *Connick*, 461 U.S. at 148–49, 103 S.Ct. 1684. Plaintiff expressed her concern about racial discrimination in the context of the investigation of Arriola, her boyfriend at the time. This circumstance weighs against her in the *Pickering* analysis.

*Ariza v. City of New York*, 139 F.3d 132 (2d Cir.1998).

2. The factual findings of the impartial hearing panel, even if considered hearsay, would be admissible under Fed.R.Evid. 803(8)(C) because the panel made factual findings, was authorized by law (Conn.Gen.State. 10–151(d)), and plaintiff has suggested no reason to doubt the findings' trustworthiness. *Cf.*

3. She also contends that she enjoys statutory immunity as a mandated reporter of child abuse.

Plaintiff's speech-related activities took the form of the following, or so the administration could reasonably believe: warning a witness not to cooperate with the sexual harassment investigation of Arriola, in violation of a direct order that she not discuss the investigation; involving students in a public confrontation with the administration by distributing the newspaper that "excoriated" the administration for the destruction of Native American dwellings built by her class; and filing child abuse charges against the teachers who had accused Arriola of sexual harassment, charges DCF determined to be unfounded.

These speech-related activities occurred in the context of a sexual harassment investigation of a teacher, which is a difficult, sensitive and potentially volatile undertaking for a school's administrators. In that context, defendants could reasonably believe that plaintiff's activities had a grave potential to obstruct the investigation of Arriola and seriously interfere with the effective functioning of the school.

Weighing plaintiff's interest as a citizen in opposing alleged discrimination at the school and the school's interest as an employer, the school's interest easily prevails. Accordingly, First Amendment claim is dismissed.

### 3. *Due Process*

■ Plaintiff claims that her due process rights were violated when she was suspended without a hearing and again when the Board terminated her employment after accepting her resignation. Neither claim has merit.

Suspension of a teacher with pay does not require a due process hearing. Conn. Gen.Stat. § 10–151(d). *See Geren v. Bd. of Educ. of Town of Brookfield,* 36 Conn.App. 282, 650 A.2d 616 (1994) (court does not entertain the possibility that suspension of teacher with pay required due process

hearing). The plus factor plaintiff relies on—her inability while suspended to earn continuing education units ("CEUs") in Windham schools—is of no consequence. The suspension did not cause her accumulated CEUs to lapse or prevent her from collecting CEUs elsewhere.

Plaintiff's resignation in the face of the impartial hearing panel's recommendation that her employment be terminated for cause—a recommendation based on lengthy investigation—did not create a due process right to another hearing before she could be terminated. Accordingly, the due process claim is dismissed.

### 4. *COBRA*

■ Plaintiff does not dispute the sufficiency of the COBRA notice that was given to her, but claims that her minor children, who were living with her at the time, were entitled to a separate notice. This claim is also unavailing.

A good faith effort to comply with COBRA notice requirements is sufficient. *Ehrlich v. Howe,* 848 F.Supp. 482, 490 (S.D.N.Y.1994). Plaintiff's COBRA notice clearly stated that her coverage was "family" coverage. Sending a separate notice to her minor children living at the same residence was unnecessary. *See Conery v. Bath Associates,* 803 F.Supp. 1388, 1399 (N.D.Ind.1992). Accordingly, this claim is also dismissed.

### 5. *State Law Claims*

Because the federal claims have not survived the motion for summary judgment, the court declines to exercise pendent jurisdiction over the state law claims.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motions to strike and for summary judgment are denied; defendants' motion for summary judgment is granted as to the

federal claims, which are dismissed with prejudice, but denied as to the state law claims, which are dismissed without prejudice.

So ordered.