**Linda SABATINO, Plaintiff,**

v.

**FLIK INTERNATIONAL CORP. and the Compass Group, North America, Defendants.**

**No. 02 CIV. 3427(WCC).**

United States District Court,
S.D. New York.

Oct. 10, 2003.

As Amended Dec. 5, 2003.

Trivella, Forte & Smith, LLP (Christopher A. Smith, Esq., Of Counsel), White Plains, NY, for Plaintiff.

Littler Mendelson P.C. (Andrew P. Marks, Esq., Jennifer F. DiMarco, Esq., Of Counsel), New York City, for Defendants.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Linda Sabatino brought this action against defendants Flik International

Corp. ("Flik") and its parent company Compass Group U.S.A., Inc. ("Compass") alleging discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") under the Pregnancy Discrimination Act amendment ("PDA") as well as the New York Constitution, New York State Human Rights Law, and §§ 296–297 of the Executive Law, the Family and Medical Leave Act ("FMLA"), wrongful termination, breach of contract, implied covenant of good faith and fraud.[1] Defendants now bring this motion for summary judgment pursuant to FED. R. CIV. P. 56. For the reasons stated below, the motion is granted.

## BACKGROUND

Flik provides cafeteria, catering and other food and beverage services to corporations. (Defs. Rule 56.1 Stmt. ¶ 1; Pl. Rule 56.1 Stmt. ¶ 1.) Compass is the parent company of Flik, with offices located in Rye, New York. (Defs. Rule 56.1 Stmt. ¶¶ 2, 4; Pl. Rule 56.1 Stmt. ¶¶ 2, 3.) Plaintiff commenced her employment with Flik on August 1, 1988 as an assistant food manager at Flik's account at IBM in Hawthorne, New York. (Defs. Rule 56.1 Stmt. ¶ 4; Pl. Rule 56.1 Stmt. ¶ 5.) During her tenure with Flik, plaintiff was transferred at least seven times to different locations. (Defs. Rule 56.1 Stmt. ¶ 5; Pl. Rule 56.1 Stmt. ¶ 6.) In or about January 1999, Flik transferred plaintiff to the assistant manager position at Flik's Bayer Diagnostic account in Tarrytown, New York. (Defs. Rule 56.1 Stmt. ¶ 6; Pl. Rule 56.1 Stmt. ¶ 7.) Christopher Craven is employed by defendants as a district manager. (Defs. Rule 56.1 Stmt. ¶ 9; Pl. Rule 56.1 Stmt. ¶ 10.) The Bayer account was within Craven's district. (Defs. Rule 56.1 Stmt. ¶ 9; Pl. Rule 56.1 Stmt. ¶ 10.) Steven Lynch was the on-site manager of the Bayer account and reported to Craven.[2] (Defs. Rule 56.1 Stmt. ¶ 10; Pl. Rule 56.1 Stmt. ¶ 9.) The above facts are the few upon which plaintiff and defendants agree. The facts that follow are in dispute.

Defendants contend that plaintiff did not have an employment contract with Flik and was aware that she was an employee at will who could be terminated at any time. (Defs. Rule 56.1 Stmt. ¶ 8; Sabatino Dep. at 104–106.) Defendants further state that all leaves of absence from work are administered through a human resources office located in Rye Brook, New York and that supervisors are not permitted to grant or extend leave. (Defs. Rule 56.1 Stmt. ¶ 11.) Plaintiff contends that she did have an employment contract in the form of a memorandum written by her supervisor Lynch to Craven dated April 4, 2000 ("4/4/00 Memo"), which states in pertinent part that plaintiff, "will be going on maternity leave. Upon Linda's return to work, she will be given her assistant managers job back at the Bayer # 325 café with the same responsibilities she had before she left." (Pl. Rule 56.1 Stmt. ¶ 9; Defs. Mem. Supp. Summ J., Ex. D.) Based on this, plaintiff argues that she was not an employee at will who could be terminated at any time with or without cause, and further, never received an employee handbook from the defendants. (Pl. Rule 56.1 Stmt. ¶ 9; Sabatino Aff. ¶ 14.) Moreover, plaintiff contends that Lynch and Craven were authorized to extend her leave of absence. (Defs. Rule 56.1 Stmt. ¶ 11; Pl. Rule 56.1 Stmt. ¶ 10.)

---

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Lynch was terminated by Flik in or about July 2000 and replaced by William Serra. Lynch could not be located to answer questions in connection with this action.

In February 2000, plaintiff notified Flik's human resource office that she was pregnant and would need a maternity leave of absence. (2d Am.Complt.¶ 8.) Pursuant to Compass's Family and Medical Leave policy, plaintiff was entitled to take up to sixteen weeks of unpaid leave in connection with the birth of her child, four weeks more than that required by the FMLA. (Defs.Mem.Supp.Summ. J., Ex. C.) Plaintiff began her maternity leave on September 29, 2000. (Sabatino Dep. at 218.) Defendants contend that they notified plaintiff by letter dated October 4, 2000 (the "10/4/00 letter") that her leave would expire on January 19, 2001 and included three enclosures that listed her rights under the FMLA. (Defs. Rule 56.1 Stmt. ¶ 15; Defs. Mem. Supp. Summ. J., Ex. C.) Plaintiff contends she never received the letter that detailed the designated leave dates, nor the enclosures. (Pl. Rule 56.1 Stmt. ¶ 14.)

Defendants next contend that plaintiff did not return to work at the expiration of her maternity leave, but instead was out of work on vacation between January 19, 2001 and March 5, 2001. (Defs. Rule 56.1 Stmt. ¶¶ 16–17; Sabatino Dep. at 213.) Plaintiff denies being on vacation during this time. (Pl. Rule 56.1 Stmt. ¶ 14.)

During plaintiff's maternity leave, the assistant manager position at Bayer was, according to defendants, temporarily filled by Ethel Cuyco, a woman of childbearing age. (Defs. Rule 56.1 Stmt. ¶ 18.) Cuyco was employed as an "Ace Manager," a floating manager responsible to cover for managers on vacation, out sick, on a leave of absence or to cover a special event. (*Id.*) Defendants argue that when plaintiff did not return to work on January 19, 2001, Flik permanently assigned Cuyco to the assistant manager position. (*Id.* ¶ 21.) Plaintiff contends that Cuyco permanently replaced plaintiff as soon as her maternity leave began. (Pl. Rule 56.1 Stmt. ¶ 14.)

Defendants contend that neither Flik policy nor the FMLA require Flik to reinstate an employee to the position she held prior to her FMLA leave of absence and that no one at Flik represented to plaintiff that she would be reinstated to the assistant manager position at Bayer if she did not return to work at the conclusion of her maternity leave. (Defs. Rule 56.1 Stmt. ¶¶ 19–20.) While plaintiff was on maternity leave, Flik downsized the Bayer account in response to the client's demand for reduced cost by reducing the food program and eliminating a number of hourly employees. (*Id.* ¶ 21.) By permanently assigning Cuyco to the assistant manager position when plaintiff did not return to work on January 19, 2001, salary expenses were cut by approximately $500.00 per month. (*Id.*)

Plaintiff contacted Flik on February 22, 2001 about returning to work and was informed that she was not permitted to return to work at her former position. (Defs. Rule 56.1 Stmt. ¶ 22; Pl. Rule 56.1 Stmt. ¶¶ 11–12.) However, Flik offered plaintiff the position of company store manager at its account at Philip Morris in Rye Brook, New York. (Defs. Rule 56.1 Stmt. ¶ 23.) While defendants claim that the salary and benefits at Philip Morris would have been commensurate with plaintiff's previous salary and benefits at Bayer, plaintiff claims that she was never advised of this. (Defs. Rule 56.1 Stmt. ¶ 24; Pl. Rule 56.1 Stmt. ¶ 17.) Further, plaintiff claims that she was not advised if her seniority rights would continue or what the new hours would be. Moreover, plaintiff contends that the job would not include management of food services and that there would be no opportunity for promotion. (Pl. Rule 56.1 Stmt. ¶ 16.) Plaintiff declined the position with Philip Mor-

ris. (Defs. Rule 56.1 Stmt. ¶ 25.) The defendants mailed plaintiff an unsolicited employment separation agreement.

On June 27, 2001, Brian K. Oppeneer, general counsel to Compass, wrote plaintiff's attorney, Christopher Smith, an e-mail offering to reinstate plaintiff to her former position at Bayer, which she apparently declined.[3] (Defs.Mem.Supp.Summ. J., Ex. D.)

## DISCUSSION

### I. *Summary Judgment Standard*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in her favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### II. *Pregnancy Discrimination Act*

■ The PDA is a definitional amendment to Title VII enacted to include pregnancy-based discrimination in Title VII's prohibition of gender-based employment discrimination. The elements of an employment discrimination claim are "virtually identical" under the New York Executive Law and Title VII. *LaCoparra v. Pergament Home Centers, Inc.*, 982 F.Supp. 213, 225 (S.D.N.Y.1997) (Conner, J.). Therefore, our analysis of plaintiff's Title VII claim is equally applicable to plaintiff's claims under New York Executive Law §§ 296–297.

■ A claim for employment discrimination is governed by the three-step burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dean v. Westchester County Dist. Attorney's Office*, 119 F.Supp.2d 424, 430 (S.D.N.Y.2000) (Conner, J.). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination drops out and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimi-

---

**3.** Defendants contend in their moving papers that the offer was ignored while plaintiff did not address it in her motion papers.

nation. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In addition, the plaintiff must submit evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination. *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 561 (2d Cir.1997). In other words, the defendant's proffered reason "cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (emphasis in original). *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. 2742.

▮ To establish a prima facie case of discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) she was performing her duties satisfactorily; (3) she was discharged or suffered an adverse employment action; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *Quaratino,* 71 F.3d at 64. In the alternative, a plaintiff may satisfy the fourth element by showing that the discharge "occurred in circumstances giving rise to an inference of unlawful discrimination." [4] *Id.; Kerzer,* 156 F.3d at 401–02. The plaintiff's burden to establish a prima facie case is *de minimis. See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995).

## A. *Plaintiff's Prima Facie Case*

▮ It is not in dispute that plaintiff is a member of a protected class and was performing her duties satisfactorily. What remains in dispute however is whether she suffered an adverse employment action and whether she was replaced by a non-pregnant employee or, in the alternative, whether the adverse employment action occurred in circumstances giving rise to an inference of discrimination.

Adverse employment actions may be indicated by a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (quoting *Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7thCir.1993)). Lesser action may also meet the threshold for adverse action, but, because there are no bright line rules, the Second Circuit acknowledged that "courts must pore over each case to determine whether the challenged employment actions reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997). However, "a mere inconvenience or an alteration of job responsibilities" will not be considered materially adverse. *Galabya,* 202 F.3d at 640.

Plaintiff argues that not being reinstated to her former position constituted an adverse employment action because the position they did offer her was not equivalent. Plaintiff claims that defendants never informed her of the salary and benefits of the Philip Morris position, but that the hours were different, the location was different and the job responsibilities were different in that she would have been managing a company store at Philip Morris, while she was the assistant manager of a

---

**4.** Defendants argue that because plaintiff was not pregnant when the alleged discriminatory decision was made, the only applicable test for the fourth element of her prima facie case is a showing that the discharge occurred in circumstances giving rise to an inference of unlawful discrimination. We disagree. The Second Circuit has used the test of whether a non-pregnant employee replaced the plaintiff when the plaintiff was fired after she gave birth. *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir.1998).

cafeteria at Bayer. (Sabatino Dep. at 246–47.) In addition, plaintiff states that the opportunities for promotion and vertical mobility were less at Philip Morris than at Bayer. (Sabatino Aff. ¶ 3.)[5] While defendants dispute that the two positions are unequal, there does appear to be a discrepancy about the salary. Brian Donohue, who at the time was group manager at Compass's account at Philip Morris, stated in his affidavit that he told plaintiff that she "could earn up to $38,000," which fails to state precisely what she would be making and specifically whether it was equivalent to her previous salary of $37,440. (Donohue Aff. ¶ 4.) Similarly, Craven states that plaintiff would have received the same benefits if she took the Philip Morris position, but fails to mention the salary. (Craven Aff. ¶ 8.) Neither of these statements unequivocally specifies that the Philip Morris salary would be equal to her salary at Bayer. Because of the salary discrepancy, the differences in hours, location and responsibility as well as the *de minimis* burden standard, plaintiff has satisfied the third element for her prima facie case.

Plaintiff must also establish that she was replaced by a non-pregnant employee or alternatively, that the adverse employment action occurred in circumstances giving rise to an inference of discrimination. While both parties address only the alternative fourth element, the Court finds from its review of the proffered evidence that defendants replaced plaintiff at Bayer with a non-pregnant employee, Ethel Cuyco. (Craven Dep. at 62; Defs. Rule 56.1 Stmt. ¶ 21 ("When Sabatino did not return to work on January 19, Flik permanently assigned Cuyco to the assistant manager position . . . .").) Whether Cuyco replaced plaintiff immediately upon plaintiff's leave or after plaintiff failed to return to work is not relevant at this stage. Because Cuyco, a non-pregnant employee, replaced plaintiff, the fourth element of plaintiff's prima facie case is satisfied without examining the alternative test.

### B. *Defendants' Legitimate, Non-Discriminatory Reason*

■ The burden of production now shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino*, 71 F.3d at 64. Defendants submit, as their legitimate non-discriminatory reason for discharging plaintiff, that while plaintiff was on maternity leave, Bayer demanded that defendants reduce the expenses associated with the account. Defendants did this by decreasing the payroll, thereby eliminating several hourly employees, reducing services and using a less experienced assistant manager. As many courts have found that a reduction in workforce for financial reasons is sufficient to fulfill a defendants' burden of production, defendants' undisputed evidence for not reinstating plaintiff to her position at Bayer is sufficient to satisfy their burden. *Koppenal v. Nepera, Inc.*, 74 F.Supp.2d 409, 413 (S.D.N.Y.1999) (Conner, J.).

### C. *Pretext*

■ This leaves plaintiff with the burden to establish by a preponderance of the evidence that defendants' stated reason was merely a pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 515, 113 S.Ct. 2742. Defendants' proffered reason

---

**5.** Contrary to defendants' argument that plaintiff is contradicting her deposition testimony by adding her concerns regarding vertical mobility and opportunities for promotion, the Court finds plaintiff is supplementing her deposition testimony rather than contradicting it. *Weafri Well Servs., Co. Ltd. v. Fleet Bank, Nat'l Assoc.*, 2000 WL 1472724, at *8 n. 9 (S.D.N.Y. Sept. 29, 2000).

"cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* (emphasis in original); *Koppenal,* 74 F.Supp.2d at 413.

Plaintiff argues that defendants' claim of downsizing for financial reasons is a pretext based on Craven's deposition testimony: "Q: During the period that an individual is on unlimited sick pay is their job preserved for them? A: It depends on the circumstances." (Craven Dep. at 73.) Based on this testimony, plaintiff argues that a jury could find that employees who are out for reasons other than maternity leave, *i.e.* sick leave, do have their jobs preserved for them, unlike plaintiff.

Plaintiff presents no evidence that defendants' non-discriminatory reason was false. She points to nothing that would indicate Bayer did not seek a reduction in expenses or that hourly employees were not terminated or that food service reduction did not occur. The evidence she does point out establishes only that whether the job of an employee out on unlimited sick pay is preserved depends on the circumstances. Those circumstances, Craven continues, depend "on what [defendants] needed to do to cover the position while [the employee was] out." (*Id.*) That explanation in no way contradicts defendants' proffered reason for failing to preserve plaintiff's job. There is similarly no evidence to indicate that discrimination was the real reason for not returning plaintiff to her position. Plaintiff points out that another female employee came back to work following maternity leave and was not reinstated to her former position. Not only is this completely acceptable under the FMLA, but it by no means establishes pretext. *Bennett v. Watson Wyatt & Co.,* 136 F.Supp.2d 236, 249 (S.D.N.Y.2001) (citing *Francis v. Runyon,* 928 F.Supp. 195,

202 (E.D.N.Y.1996) ("Plaintiff may also establish pretext by demonstrating that similarly situated employees *outside of the protected class* were treated differently.") (emphasis added)). A declaration from that employee, Nicole Ryall, states that she did not feel she was treated unfairly or discriminated against because she took FMLA leave and upon her return to work accepted another position defendants offered. (Ryall Decl. ¶¶ 4–5.) Plaintiff fails to identify any employees on leave for reasons other than maternity who did return to their former positions upon returning to work and more specifically she fails to point out any that were returned to their former positions despite downsizing of the account. Therefore, because plaintiff failed to submit evidence tending to show that defendants' proffered reason for not reinstating plaintiff to her position at Bayer was a pretext, defendants' motion for summary judgment on the Title VII, Pregnancy Discrimination Act amendment is granted.

### III. *FMLA*

Plaintiff contends that defendants violated two provisions of the FMLA: 1) defendants did not reinstate plaintiff to her former position or an equivalent position following her return to work; and 2) defendants retaliated against her for taking leave by not reinstating her and eventually terminating her employment.

#### A. *Denial of Reinstatement*

In order to make out a case for interference with benefits under 29 U.S.C. § 2615(a)(1), a plaintiff must establish that: 1) she is an eligible employee; 2) she was entitled to take leave under the FMLA; 3) she gave notice to defendants of her intention to take leave; and 4) defendants denied her the benefit to which she was entitled under the FMLA. *Brenlla*

*v. LaSorsa Buick Pontiac Chevrolet,* No. 00 Civ. 5207, 2002 WL 1059117, at *4 (S.D.N.Y. May 28, 2002). The issue in dispute is whether plaintiff was denied the benefit of being reinstated to her former position or an equivalent position following her return to work.

▮ Before analyzing whether the Philip Morris position was equivalent to the Bayer position, the Court must determine if plaintiff returned to work upon the expiration of her 16–week maternity leave. According to the 10/4/00 letter, plaintiff's return date was January 19, 2001. (Defs.Mem.Supp.Summ. J., Ex. C.) Plaintiff did not seek to return to work until February 22, 2001. (2d Am.Complt.¶ 9.) One of the enclosures sent to plaintiff with the 10/4/00 letter stated, "Your failure to return to work at the end of the leave period may be treated as a resignation from employment unless Compass Group USA has agreed to an extension of the leave in writing." (Dietlein Aff., Ex. A.) Based on this, defendants had no obligation to return plaintiff to any job, let alone her former position. However, plaintiff sets forth three arguments to the contrary: 1) she never received the 10/4/00 letter; 2) the reference to a twelve-month period in defendants' family and medical leave policy is ambiguous; and 3) plaintiff relied on the 4/4/00 Memo written by Lynch which provides an indefinite amount of time for maternity leave.

Plaintiff claims that she is "not really sure" if she received the 10/4/00 letter, which stated that her FMLA leave began October 2, 2000 and her expected return date was January 19, 2001, and was accompanied by a three-page list of plaintiff's rights under the FMLA. (Sabatino Dep. at 45.) Surprisingly, while plaintiff questions whether she received the letter, she produced it in discovery along with two of the three enclosures. (DiMarco Reply Decl.

¶ 4.) Therefore this Court can only conclude that she did receive the letter.

Plaintiff attempts to convince the Court that defendants' policy is ambiguous as to when the twelve-month period begins. The FMLA provides that an eligible employee is entitled to twelve workweeks of leave during any twelve-month period. 29 C.F.R. § 825.200(a) (2003). An employer may choose from the following methods to determine the twelve-month period:

1) The calendar year; 2) any fixed 12–month 'leave year' such as a fiscal year, a year required by State Law, or a year starting on an employee's 'anniversary' date; 3) the twelve month period measured forward from the date an employee's first FMLA leave begins; or 4) a 'rolling' 12–month period measured backward from the date an employee uses any FMLA leave . . . .

29 C.F.R. § 825.200(b)(1–4) (2003).

Compass's Family and Medical Leave policy states that "once it is determined that the associate qualifies for a leave of absence he/she will be provided with up to sixteen (16) weeks of unpaid leave in the twelve (12) month period, *beginning from the first day of the schedule [sic] leave.*" (emphasis added). (Defs.Mem.Supp.Summ. J., Ex. C.) According to plaintiff, a reasonable interpretation of defendants' leave policy would be that plaintiff was allowed sixteen weeks maternity leave every twelve months, meaning sixteen weeks for the year 2000 and another sixteen weeks for the year 2001. Based on that interpretation, plaintiff would have been eligible for maternity leave from approximately October 2000 through mid-May 2001, assuming the balance of the 2000 FMLA period rolls over into 2001, or through April 2001 if it does not roll over. However, defendants' policy clearly indicates that the twelve-month period is measured forward from the date

FMLA leave begins. Plaintiff cannot now argue that one could reasonably interpret it to mean a calendar year, thereby giving her thirty-two consecutive weeks of leave starting in the latter part of 2000 and continuing into 2001. While Compass's Family and Medical Leave policy was not included in the 10/4/00 letter, the letter directs plaintiff to review it and provides the name of the FMLA specialist to contact if plaintiff does not have a copy of the policy. (Dietlein Aff., Ex. A.)

Plaintiff further argues that she relied on the 4/4/00 Memo, which does not provide a specific return date from leave and states that she will be placed back in the assistant manager position at Bayer upon her return to work. (Defs.Mem.Supp.Summ. J., Ex. D.) Plaintiff argues that a jury could find that Lynch approved a maternity leave of indefinite duration upon which plaintiff detrimentally relied. (Pl. Mem. Opp. Summ. J. at 12; 2d Am. Complt. ¶ 8.) However, Plaintiff testified in her deposition that she requested four months leave from Craven and she requested that Lynch write the 4/4/00 Memo in order for her to return to her former position. (Sabatino Dep. 40–41, 69.) There is nothing in her deposition to indicate that she remained on leave in reliance on the 4/4/00 Memo. In fact, plaintiff stated in her deposition that after her maternity leave ended, she took vacation leave. (*Id.* at 213.) Plaintiff has failed to set forth any evidence that raises a question of fact regarding her reliance on the indefinite time period in the 4/4/00 Memo.

Even if plaintiff could establish a question of fact regarding her date to return to work, defendants offered her a position as company store manager at their Philip Morris account, a position plaintiff claims

was not equivalent, and which defendants claim was not merely equivalent but more prestigious.

According to 29 C.F.R. § 825.215(a), "[a]n equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, responsibility, and authority." At the same time, this requirement does not extend "to de minimis or intangible, unmeasurable aspects of the job." 29 C.F.R. § 825.215(f) (2003).

Plaintiff argues that she was never informed of the salary and benefits of the Philip Morris position, that the hours, location and the job responsibilities were different and that the opportunities for promotion and vertical mobility were less at Philip Morris than at Bayer. (Sabatino Aff. ¶ 3.) Even assuming that defendants never told plaintiff the salary and benefits at the Philip Morris position, the differences between the positions that plaintiff gave for turning down the job, *i.e.* hours, location, job responsibility, are *de minimis*. Defendants state that the Philip Morris account, located in Rye Brook, New York, was located "less than ten miles" from the Bayer account, located in Tarrytown, New York, while plaintiff simply states that the Philip Morris account was "miles away" from Bayer. (Defs. Mem. Supp. Summ. J. at 10; Sabatino Aff. ¶ 3.) Further, plaintiff states that the hours were objectionable but at her deposition could not recall what her hours at Bayer were and what her hours at Philip Morris would have been but only that they were not the same.[6] (Sabatino Dep. at 21, 247.)

---

6. 29 C.F.R. § 825.215 states that the employee is entitled to return to the same or equivalent work schedule. If plaintiff does not know what the hours were, she cannot create

Moreover, plaintiff states that her job responsibilities would be different in that at Bayer she was assistant manager of a cafeteria and at Philip Morris she would be manager of a company store. Plaintiff viewed the position as a step back in her career because "it was a different job" even though the Philip Morris position was "manager" while the Bayer position was "assistant manager." (*Id.* at 254.) Plaintiff stated many times in her deposition that the job responsibilities were different but failed to set forth any evidence to suggest that the Philip Morris position was unequal to the Bayer position. We can only conclude that any differences between plaintiff's former position and the position offered to her upon return from leave are *de minimis.*

In her affidavit, plaintiff states that there was less opportunity for promotion at Philip Morris yet she sets forth no evidence of this alleged deficiency other than her own conclusory affidavit. Meanwhile, defendants listed the promotional opportunities available: "Had Ms. Sabatino accepted the Philip Morris position, she would have been eligible to be promoted thereafter to Food Service Director, Company Store Team Leader or to the Company Store Manager for one of Compass Group's larger accounts." (Donohue Reply Aff. ¶ 3.) Without setting forth specific facts, plaintiff's conclusory statements will not prevent summary judgment. FED. R. CIV. P. 56(e) ("[T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.").

As noted above, defendants have not definitively stated that the Philip Morris

salary would be the same as the Bayer salary. However, even if it could be said that the Philip Morris position was not equivalent to the Bayer position, defendants offered plaintiff her former position in an e-mail dated June 27, 2001, nearly one year before this Complaint was filed and approximately four months after plaintiff turned down the Philip Morris position and was subsequently terminated. (Defs.Mem.Supp.Summ. J., Ex. D.) Plaintiff exceeded the allotted time given for maternity leave, turned down an equivalent job even though defendants were not obligated under the FMLA nor their own policy to reinstate her to any job and then turned down defendants' offer to reinstate her to her former position. Because plaintiff failed to present any triable issues of fact, summary judgment on the FMLA violation of failure to reinstate is granted.

**B.   *Retaliation***

■■■ Plaintiff's third cause of action is based on a violation of the FMLA, specifically "terminating and otherwise discriminating against the plaintiff in retaliation for her taking family medical leave." (2d Am.Complt.¶ 18.)

There is a dispute as to what standard to use for the retaliation claim. 29 U.S.C. § 2615(a)(1) provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter," and 29 U.S.C. § 2615(a)(2) provides that "it shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter." While the plaintiff argues that the *McDonnell Douglas* standard should be used, defendants argue that it should not, although they fail to set forth an alternative standard.

an issue of fact as to whether the work schedule was equivalent.

While the Second Circuit has not addressed the issue, many courts within the Second Circuit have held that the *McDonnell Douglas* analysis applies to FMLA retaliation claims brought under § 2615(a)(2), but differ as to whether *McDonnell Douglas* applies to claims brought under § 2615(a)(1). *Darboe v. Staples, Inc.*, 243 F.Supp.2d 5, 16 (S.D.N.Y.2003) (citing cases). In this case, plaintiff does not allege that she was retaliated against because she opposed a practice made unlawful; rather she alleges she was retaliated against because she exercised her rights under the FMLA, making her claim fall under § 2615(a)(1). *Mann v. Mass. Correa Elec., J.V.*, No. 00 Civ. 3559, 2002 WL 88915, at *6 (S.D.N.Y. Jan. 23, 2002).

The *McDonnell Douglas* test, *see supra* Part II, is a more rigorous standard than that developed by the Ninth Circuit and used in at least one decision in this District, which requires plaintiff to show that: "(1) she participated in FMLA-protected activity and (2) the decision to terminate her employment was motivated by her participation in the protected activity." *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir.2001); *Mann*, 2002 WL 88915, at *5. Because the Second Circuit has not spoken as to which standard to use, the Court will first address the less rigorous standard and then, if necessary, the *McDonnell Douglas* standard.

It is undisputed that plaintiff participated in an FMLA-protected activity, maternity leave. The question is whether plaintiff can show that the decision not to reinstate her to her former position was motivated by her taking maternity leave. Plaintiff fails to point out any remarks or documents that would indicate she would not be reinstated because she took FMLA leave, nor is she aware of any other employees who were reinstated to their former positions upon returning from sick, disability or other leave. The evidence plaintiff does point to is Craven's comment and Ryall's maternity leave. *See supra* Part II.C. Even using a less rigorous standard, this evidence fails to show a connection between plaintiff's maternity leave and defendants' decision not to reinstate her to the Bayer account.

Because plaintiff cannot satisfy even the less rigorous standard, an analysis under *McDonnell Douglas* is unnecessary.

### CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted and plaintiff's Complaint is dismissed in its entirety.[7]

SO ORDERED.

---

7. Because the federal claims have not survived the motion for summary judgment, we decline to exercise pendent jurisdiction over the state law claims. *McDermott v. Town of Windham Pub. Sch.*, 225 F.Supp.2d 180, 184 (D.Conn.2002).