Cristina L. STAINKAMP, Plaintiff,

v.

CHANGES INTERNATIONAL OF FORT WALTON BEACH, INC., Twinlab Laboratories, Inc., Twinlab Corporation and W. Steven Coggin, Defendants.

No. 01–CV–0262(SJF)(MLO).

United States District Court, E.D. New York.

June 20, 2005.

Thomas Pietrantonio, Thomas Pietrantonio, P.C., Port Washington, NY, for Plaintiff.

Kevin P. Simmons, Andrew Kazin, Simmons, Jannace & Stagg, L.L.P., East Meadow, NY, for Defendants.

## OPINION & ORDER

FEUERSTEIN, District Judge.

### I. Introduction

Plaintiff Cristina Stainkamp ("Plaintiff" or "Stainkamp") initiated this action against defendants Changes International of Fort Walton Beach, Inc. ("Changes"), Twinlab Laboratories, Inc., Twinlab Corporation (together with Twinlab Laboratories, Inc., "Twinlab") and Changes' Chief Executive Officer, W. Steven Coggin (collectively "Defendants") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the New York State Human Rights Law, New York Executive Law § 290 et seq. ("New York Human Rights Law"), alleg-

ing pregnancy discrimination. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

### II. Background

Stainkamp was employed by Changes from February 16, 1999 until December 1, 1999. (Stainkamp Dep. at 5–6; Def. 56.1 Stmt, ¶ 4). Originally hired as a Senior Director of Sales Support & Field Communication, she was the Senior Director of Special Events at the time of her termination. (Stainkamp Aff. at 2). Changes is a wholly-owned subsidiary of Twinlab; both companies market and sell nutritional supplements. (Def. 56.1 Stmt., ¶ 27; Coggin Aff., ¶ 2; Stainkamp Dep. at 90). As Director of Special Events, Stainkamp was responsible for organizing Changes' annual national convention and its "President's Club Incentive Trip." (Stainkamp Dep. at 10; Def. 56.1 Stmt., ¶ 4).[1]

In September or October of 1999, as a result of declining sales, Coggin testified that he was told to cut approximately $700,000 from his proposed budget. (Coggin Dep. at 16). Coggin asked Stainkamp to reduce expenditures for the convention and the incentive trip by a total of $120,000. (Stainkamp Dep. at 10). Coggin also claims that he decided to terminate Stainkamp at some point in September or October, along with three other employees, as part of these budget cuts. (Coggin Dep. at 16–17). Coggin informed Fran Colombi, Changes' comptroller, of

---

1. Defendants have objected to Plaintiff's submission of an amended 56.1 statement. (Def. Letter dated June 7, 2005). Because Defendants have not demonstrated that Plaintiff's submission of an amended statement prejudices them in any way, the Court will accept the amended statement. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules.")

this decision shortly thereafter. (Colombi Dep. at 11).

On October 4, 1999, Stainkamp discovered that she was pregnant. (Stainkamp Dep. at 37). Stainkamp informed her secretary, Carol Ann Scolaro, and Colombi of her pregnancy and asked them to keep it a secret. (*Id.* at 40–41). According to Colombi, Stainkamp told her that she did not want to publicize her pregnancy until after the first trimester. (Colombi Dep. at 27).

Thomas Lupo, Changes' Vice President of Sales, testified that Coggin informed him that Stainkamp was going to be terminated in early November. (Lupo Dep. at 11). On November 23, 1999, Richard Perles, a Vice President in Changes' Human Resources department, sent a memo to Joe Conklin requesting that Conklin "prepare a General Release & Agreement ... related to the termination of Christina [sic] Stainkamp which is part of a headcount reduction (position elimination) in the *Change* organization." (Pietrantonio Aff. Ex. J) (emphasis in original).

Colombi testified that she approached Lupo towards the end of November and informed him of Stainkamp's pregnancy. As Colombi explained, "I told Tom Lupo, 'Tom, listen, I don't know what's the holdup, but Cristina is pregnant and she is going to announce it soon, and you know that might put the company in a weird predicament." (Colombi Dep. at 80). According to Colombi, Lupo responded "It's all in HR. There's nothing we can do. Twinlab handles all that kind of stuff." (*Id.*) Colombi also testified that, other than Lupo, she did not tell anyone that Stainkamp was pregnant. (*Id.; see also* Stainkamp Dep. at 41).

On November 29, Stainkamp informed Coggin that she was pregnant. (Stainkamp Dep. at 7). Stainkamp also testified that, other than Colombi and Scolaro, she had not informed anyone else at Changes

until this point. (*Id.* at 38, 48). According to Stainkamp, Coggin responded by asking her if it "was planned," stating that he hoped it was not "contagious," and telling her "That's what you get for fooling around." (*Id.* at 75–76). On December 1, 1999, Stainkamp was terminated. (*Id.* at 6).

### III. Summary Judgment Standard

Summary judgment should not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material "if it might affect the outcome of the suit under the governing law." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir.2001). An issue of fact is genuine only if a jury could reasonably find in favor of the nonmoving party based on that fact. *Id.* The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court is required to construe the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in its favor. *Id.* at 252, 106 S.Ct. 2505; *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir.1996).

The Second Circuit has recognized that direct evidence of discriminatory intent is rare, and often must be inferred from circumstantial evidence found in the pleadings. *Holtz*, 258 F.3d at 69. Thus, granting summary judgment in such cases should be done with an extra measure of caution. However, if a discrimination case

is void of genuine issues of material fact, summary judgment may be appropriate. *Id.* (citing *McLee v. Chrysler Corp.,* 109 F.3d 130, 135 (2d Cir.1997)); *see also Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir.2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

## IV. Analysis [2]

■■■■ In cases where there is no direct evidence of discrimination, such as this case, there is a three-step burden-shifting analysis applied to Title VII claims of intentional discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802, 93 S.Ct. 1817. To establish a *prima facie* case of pregnancy discrimination, a plaintiff must show that (1) she is a member of a protected class; (2) she satisfactorily performed the duties required by her position; (3) she was discharged; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995); *Sabatino v. Flik Intern. Corp.,* 286 F.Supp.2d 327, 333 (S.D.N.Y.2003). Alternatively, to satisfy the fourth prong, a plaintiff may show the circumstances surrounding the discharge give rise to an inference of unlawful discrimination. *Quaratino,* 71 F.3d at 64. In cases in which the employer claims that the decision to terminate was made prior to learning of the plaintiff's protected status, the plaintiff must also "adduce some evidence, whether direct or indirect, indicating a defendant's knowledge" of the plaintiff's membership in the protected class. *Wood-*

*man v. WWOR–TV, Inc.,* 411 F.3d 69, 82, 2005 WL 1384334, \*11 (2d Cir.2005). As the *Woodman* court explained, in cases where a plaintiff's membership in such a class is not necessarily obvious, such as pregnancy or religion, "a defendant's discriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant." *Id.,* at 82, 2005 WL 1384334, \*11; *see also Geraci v. Moody–Tottrup,* 82 F.3d 578, 581 (3d Cir.1996). A plaintiff must therefore produce some evidence demonstrating that the employer was aware of her protected status in order to establish a *prima facie* case. *Woodman,* 411 F.3d at 82, 2005 WL 1384334, \*11.

If a plaintiff is able to establish a *prima facie* case, it creates a presumption of the employer's unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The defendant may rebut this presumption by producing evidence, which, if taken as true by a jury, would allow the conclusion that there was a nondiscriminatory reason for the dismissal. *Weinstock,* 224 F.3d at 42; *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The defendant's burden is to produce, not persuade, *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), as long as the evidence raises a genuine issue of fact as to whether the employer discriminated against the plaintiff. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

If the employer proffers evidence of a nondiscriminatory motive for termination, the presumption of discrimination evaporates, *Weinstock,* 224 F.3d at 42, and the burden shifts back to the plaintiff, who, in order to survive a motion for summary

---

**2.** Plaintiff's Title VII and New York Human Rights Law claims are analyzed together, as the same standard of proof applies to both.

*See Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 n. 1 (2d Cir.2000); *Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997).

judgment, must offer evidence that suggests that the defendant's proffered reason is pretext for intentional discrimination. *McDonnell Douglas,* 411 U.S. at 803, 93 S.Ct. 1817. The plaintiff's evidence must be sufficient to allow a jury to infer that the dismissal was actually motivated by discrimination. *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997). However, the "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203 (2d Cir. 1995); *see also Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 82 (2d Cir.1983). To satisfy this burden, the plaintiff may rely on the evidence presented in the *prima facie* case, without more. *Hicks,* 509 U.S. at 510, 113 S.Ct. 2742. Unless the employer presents a dispositive, nondiscriminatory reason for the termination, to which there is no genuine issue, and which no rational factfinder could reject, the conflict between the plaintiff's *prima facie* case and the defendant's nondiscriminatory reason presents a question of fact to be resolved at trial. *Cronin,* 46 F.3d at 203.

### A. Counts One and Two

█ Plaintiff has failed to adduce any evidence that Coggin was aware of her pregnancy at the time he made the decision to terminate her, and she has therefore failed to establish a *prima facie* case. The Third Circuit's decision in *Geraci* is instructive. *See Geraci,* 82 F.3d 578 (as cited in *Woodman,* 411 F.3d 69). In that case, the plaintiff claimed that she was unlawfully terminated because she was pregnant. The defendants claimed that no discrimination could have occurred, however, because the individuals who had made the decision to terminate the plaintiff were not aware that she was pregnant at the time the decision was made. The Third Circuit, affirming the District Court's grant of summary judgment in favor of the defendants, held that

> [t]he traditional McDonnell Douglas–Burdine presumption quite properly makes no reference to the employer's knowledge of membership in a protected class because, in the vast majority of discrimination cases, the plaintiff's membership is either patent (race or gender), or is documented on the employee's personnel record (age discrimination). This case, however, is different. We cannot presume that an employer most likely practiced unlawful discrimination when it does not know that the plaintiff even belongs to the protected class. The employer's knowledge, in this class of cases, is a critical element of the plaintiff's prima facie case.

*Geraci,* 82 F.3d at 581. In applying this standard, the Court noted that the plaintiff "was not visibly pregnant[,] ... did not tell [the company's] management, and she requested the six friends and co-workers to whom she disclosed her pregnancy not tell management." *Id.* at 582. Thus, because "her managers filed declarations disclaiming knowledge, and [plaintiff] presented no evidence to the contrary," the Court held that summary judgment was proper.

In the present case, there is documentary evidence that the decision to terminate Stainkamp had been made by November 23, 1999. (Pietrantonio Aff. Ex. J). In order to survive summary judgment, then, Plaintiff must "adduce some evidence," *Woodman,* 411 F.3d at 82, 2005 WL 1384334, *11, that the person who decided to terminate her, be it Coggin or someone else, knew of her pregnancy on or before this date. Plaintiff has failed to do so. Coggin testified that he learned of Stainkamp's pregnancy from Colombi on either

November 28 or November 29. (Coggin Dep. at 23). Plaintiff has not presented any evidence disputing this testimony or otherwise indicating that Coggin had knowledge on an earlier date. Indeed, Plaintiff has conceded that she does not have any information that "anybody informed Mr. Coggin before November 29th of [her] pregnancy," (Stainkamp Dep. at 48), and that she does not know if the decision to terminate her was made before or after she disclosed her pregnancy. (*Id.* at 7). Furthermore, Plaintiff has not presented any evidence that someone other than Coggin made the decision to terminate her, and did so with knowledge of her pregnancy. Plaintiff's speculation as to why Coggin asked her to work on certain projects in October and November if he had already decided to terminate her, (Stainkamp Aff., ¶ 15), is insufficient to withstand summary judgment. As the *Woodman* court noted, it is "well established that conclusory statements, conjecture, or speculation are inadequate to defeat a motion for summary judgment." *Woodman,* 411 F.3d at 82, 2005 WL 1384334, *13 (internal quotations and citations omitted). Thus, as in *Geraci,* the defendants have "disclaim[ed] knowledge, and [Plaintiff has] presented no evidence to the contrary." *Geraci,* 82 F.3d at 582. Plaintiff has therefore failed to establish a *prima facie* case for Counts One and Two.

## B. Counts Three and Four

■ Counts Three and Four of Stainkamp's complaint allege that Defendants' policy requiring pregnant employees to notify the Human Resources Department of the pregnancy and obtain a certification from a health care provider violates Title VII and the New York Human Rights Law. Defendants assert that summary judgment is appropriate because (1) the policy does not discriminate against pregnant employees, and (2) Plaintiff was not adversely affected by the policy. In support of the first argument, Defendants cite *Mazzella v. RCA Global Communications, Inc.,* 642 F.Supp. 1531 (S.D.N.Y.1986). In that case, Judge Conner held that the policy at issue did not violate Title VII because it did not "not *require* a pregnant female employee to advise [the company] as soon as she learns of her pregnancy." *Id.* at 1548–49 (emphasis in original). Rather, it merely "*asks* that an employee, male or female, who expects to become disabled at a predictable future time, for whatever reason, to advise [the company] of that fact for work force planning purposes." *Id.* at 1549. By contrast, the Twinlab policy states that "[a]n employee who becomes pregnant is *required* to notify the Human Resources Department of her condition upon discovery of her pregnancy and submit written medical documentation from a health care provider stating she may safely continue in her current position without restriction." (Simmons Aff., Ex. 13 at 16) (emphasis added). There are no advance notice and certification requirements for other, nonpregnancy conditions. *See also* EEOC Guidelines, 29 CFR Part 1604 Appendix ("An employer may not single out pregnancy-related conditions for special procedures for determining an employee's ability to work."). Since there is a genuine issue as to whether the policy discriminates against pregnant employees, summary judgment is inappropriate.

Defendants' second argument, that Plaintiff was not adversely affected by the policy because she did not follow it, is equally without merit. In the event the policy is found to be discriminatory, Defendants cannot escape liability because Plaintiff did not comply with it. *See Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 50, n. 24 (N.D.Cal.1977) ("The Court rejects defendant's claim that

plaintiff, having never . . . sought leave for pregnancy related conditions, lacks standing to attack the disability leave program. As a woman of child-bearing age, if for no other reason, plaintiff is certainly 'aggrieved' within the meaning of [Title VII], by a policy which may be discriminatory in respect of pregnancy or maternity benefits."); *see also* EEOC Decision No. 76–89 (Jan 23, 1976) ("[A]ny employee, black or white, has standing to file a charge of employment discrimination alleging the existence of any unlawful employment practice, because it constitutes a term or condition of employment for all employees. Although the Charging Party is not a member of the class against which the allegedly unlawful practices are directly committed, we believe it clear that an employee's legitimate interest in the terms and conditions of his or her employment comprehends the right to work in an atmosphere free of unlawful employment practices and their consequences.")

## V. Conclusion

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED on Counts One and Two, and DENIED on Counts Three and Four.